## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| BANK OF HOPE, | ) |
| Plaintiff, | ) ) ) |
| | ) NO: 2018 CV 2106 |
| V. | ) ) |
| Z H INVESTMENTS INC., ZH FOOD INC., CHAUDHRY M. IQBAL, BUSHRA NASEER, MDDS REAL ESTATE INC., AND CENTRAL MARKET OF INDIANA INC., | ) ) ) ) ) |
| Defendants. | ) ) |

### RECEIVER'S MOTION TO APPROVE PURCHASE SALE CONTRACT

NOW COMES R. Baker Thompson, as receiver of the Property, and for its Motion to Permit Receiver to Market the Property states as follows:

1.  On or about October 25, 2018, a Judgment of Foreclosure was entered in this matter.

2.  On or about March 27, 2019, R. Baker Thompson of RBT Advisors, LLC (herein "Receiver") was appointed as receiver for the property located at <u>501 W. Fairchild St., Danville, IL 61832</u> (herein "Property).

3.  This Court granted Plaintiff's Motion to Permit Receiver R. Baker Thompson to market the Property on June 18, 2019.

4.  On or about February 3, 2021, R. Baker Thompson as receiver of the Property, entered into a Purchase and Sale Contract (the "Contract") for the Property. A true and correct copy of the Purchase and Sale Contract is attached hereto as **"Exhibit A."**

5.  The Contract is contingent on this Court's approval. *See* Exhibit A.

6.  The Contract Purchase Price of the Property is $375,000.00 but has since been amended via addendum to $362,500.00. The fully executed addendum reflecting said change is attached here to as **"Exhibit B."**

7.  It is undisputed in this matter that selling the Property is in the best interest of all parties, as it will minimize any remaining deficiency owed by Defendants to Plaintiff.

8.  Taking the best interest both parties in this matter into account, as required under 735 ILCS 5/15-1704(c), Receiver requests that the Court approve the Purchase and Sale Contract.

WHEREFORE, it is respectfully requested that the Court approve the Purchase and Sale Contract entered into by R. Baker Thompson as the Receiver of the Property and for any other relief this Court deems just and proper.

Respectfully submitted,

*/s/R. Baker Thompson*
**R. Baker Thompson**

# **EXHIBIT A**




# CHICAGO ASSOCIATION OF REALTORS®
## APARTMENTS/INVESTMENTS PURCHASE AND SALE CONTRACT
This Contract is Intended to be a Binding Real Estate Contract  Rev. 01/2012

1. **Contract**. This Apartment/Investments Purchase and Sale Contract ("***Contract***") is made by and between **Millco Acquisition Company** _____ ("***Buyer***") and **R. Baker Thompson as Receiver for Case 18-CV-2106** ("***Seller***") (collectively, "***Parties***"), with respect to the purchase and sale of the real estate and improvements located at: **501 W Fairchild St, Danville, IL 61832** ("***Property***").
   (address)              (city)              (state)     (zip)

Property P.I.N. #: **23051580230000** . Lot size:_____. Approximate square feet of Property:_____.

2. **Fixtures and Personal Property**. At Closing (as defined in Paragraph 7 of this Contract), in addition to the Property, Seller shall transfer to Buyer by a Bill of Sale, all heating, cooling, electrical and plumbing systems, together with the following checked and enumerated items ("***Fixtures and Personal Property***"):

☐ Refrigerator___         ☐ Sump Pump___             ☐ Central air conditioner__   ☐ Fireplace screen         ☐ Built-in or attached
☐ Oven/Range___           ☐ Smoke and carbon monoxide ☐ Window air conditioner__      and equipment___          shelves or cabinets__
☐ Microwave___                detectors__             ☐ Electronic air filter___   ☐ Fireplace gas log__      ☐ Ceiling fan___
☐ Dishwasher___           ☐ Intercom system___       ☐ Central humidifier___      ☐ Firewood___              ☐ Radiator covers___
☐ Garbage disposal__      ☐ Security system___ (rented or owned) (strike one)     ☐ Attached gas grill__     ☐ All planted vegetation_
☐ Trash compactor___      ☐ Satellite Dish__         ☐ Lighting fixtures___       ☐ Existing storms          ☐ Outdoor play set/swings
☐ Washer__                ☐ Attached TV(s)___        ☐ Electronic garage door(s)    and screens___           ☐ Outdoor shed
☐ Dryer___                ☐ TV Antenna__                with ___ remote unit(s)__ ☐ Window treatments___
☐ Water Softener__        ☐ LCD/plasma/multimedia equipment__ ☐ Tacked down carpeting__ ☐ Home
                          ☐ Stereo speakers/surround sound ___ ☐ Other Equipment ___     warranty (as attached)___

Seller also transfers the following: **NA** _____. The following items are excluded: **NA** _____.

3. **Purchase Price**. The purchase price for the Property (including the Fixtures and Personal Property) is $ **375,000.00** ("***Purchase Price***").

4. **Earnest Money**. Upon Buyer's execution of this Contract, Buyer shall deposit with **Seller's Title Company** ("***Escrowee***"), initial earnest money in the amount of $ **10,000.00**, in the form of **Certified Check** ("***Initial Earnest Money***"). The Initial Earnest Money shall be returned and this Contract shall be of no force or effect if this Contract is not accepted by Seller on or before **2 days after accepted**, 20**21**. The Initial Earnest Money shall be increased to *(strike one)* 10% of the Purchase Price **OR** **NA** % [percent] of the Purchase Price ("***Final Earnest Money***") within **NA** business days after the expiration of the Attorney Approval Period (as established in Paragraph 14 of this Contract) (the Initial and Final Earnest Money are together referred to as the "***Earnest Money***"). The Parties acknowledge and agree that (i) the Parties shall execute all necessary documents with respect to the Earnest Money in form and content mutually agreed upon between the parties and (ii) except as otherwise agreed, Buyer shall pay all expenses incurred in opening an escrow account for the Earnest Money.

5. ~~**Mortgage Contingency**. This Contract is contingent upon Buyer securing by **NA**, 20____ ("***First Commitment Date***") a firm written mortgage commitment for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association, bank, or other authorized financial institution, in the amount of *(strike one)* $_____ OR ____% [percent] of the Purchase Price, the interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed ____% per year, amortized over ____ years, payable monthly, loan fee not to exceed ____%, plus appraisal and credit report fee, if any ("***Required Commitment***"). If the mortgage secured by the Required Commitment has a balloon payment, it shall be due no sooner than ____ years. Buyer shall pay for private mortgage insurance as required by the lending institution. **If a FHA or VA mortgage is to be obtained, Rider 8, Rider 9, or the HUD Rider shall be attached to this Contract**. (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify Seller in writing on or before that Date. Thereafter, Seller may, within 30 business days after the First Commitment Date ("***Second Commitment Date***"), secure the Required Commitment for Buyer upon the same terms, and may extend the Closing Date by 30 business days. The Required Commitment may be given by Seller or a third party. Buyer shall furnish all requested credit information, sign customary documents relating to the application and securing of the Required Commitment, and pay one application fee as directed by Seller. Should Seller choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the Earnest Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect.~~

6. **Possession**. Seller agrees to surrender possession of the Property, subject to existing leases, on or before the Closing Date (as defined in Paragraph 7 below). If possession is not delivered on or prior to the Closing Date, then, Seller shall pay to Buyer at Closing $ **NA** per day ("***Use/Occupancy Payments***") for Seller's use and occupancy of the Property for each day after the Closing Date through and including the date Seller plans to deliver possession to Buyer ("***Possession Date***"). If Seller delivers possession of the Property to Buyer prior to the Possession Date, Buyer shall refund the portion of Use/Occupancy Payments which extend beyond the date possession is actually surrendered. Additionally, Seller shall deposit with Escrowee a sum equal to 2% of the Purchase Price ("***Possession Escrow***") to guarantee possession on or before the Possession Date, which sum shall be held from the net proceeds at Closing on Escrowee's form of receipt. If Seller does not surrender the Property on the Possession Date, Seller shall pay to Buyer, in addition to all Use/Occupancy Payments, the sum of 10% of the original amount of the Possession Escrow per day up to and including the day possession is surrendered to Buyer plus any unpaid Use/Occupancy Payments up to and including the date possession is surrendered, these amounts to be paid out of the Possession Escrow and the balance, if any, to be returned to Seller. Acceptance of payments by Buyer shall not limit Buyer's other legal remedies. Seller and Buyer hereby acknowledge that Escrowee shall not distribute the Possession Escrow without the joint written direction of Seller and Buyer. If either Party objects to disposition of the Possession Escrow, then Escrowee may deposit the Possession Escrow with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee shall be reimbursed from the Possession Escrow for all costs, including reasonable attorneys' fees, related to the filing of the Interpleader, and the Parties shall indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses.

Buyer Initials: **RM**   Buyer Initials:_____   Seller Initials: **RBT, as RCVR**   Seller Initials:_____

7. **Closing**. Buyer shall deliver the balance of the Purchase Price (less the amount of the Final Earnest money, plus or minus prorations and escrow fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to Buyer at "***Closing***". Closing shall occur on or prior to **30 days after court approval**, 20**21** at a time and location mutually agreed upon by the Parties ("***Closing Date***"). Seller must provide Buyer with good and merchantable title prior to Closing.

8. **Deed**. At Closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed ("***Deed***") (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants, conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; existing leases and tenancies, if any; all special governmental taxes or assessments confirmed and unconfirmed; and general real estate taxes not yet due and payable at the time of Closing.

9. **Real Estate Taxes**. Seller represents that the 20**18** general real estate taxes were $**8,586.61**_____. General real estate taxes for the Property are subject to the following exemptions (***check box if applicable***): ☐ Homeowner's. ☐ Senior Citizen's. ☐ Senior Freeze. General real estate taxes shall be prorated based on (i) **100**% of the most recent ascertainable full year tax bill, or (ii) mutually agreed by the Parties in writing prior to the expiration of the Attorney Approval Period.

10. **Leases**. Seller shall deliver to Buyer a complete copy of all existing leases affecting the Property and a rent roll within 3 business days of the Acceptance Date. Seller represents and warrants that (a) existing leases, if any, will be assigned to Buyer at Closing in an assignment and assumption agreement mutually agreeable to the Parties and (b) the present monthly gross rental income is $_____. Seller shall notify Buyer, prior to Closing, of any (i) new leases; (ii) modifications or amendments to the existing leases; and (iii) changes in the monthly gross rental income.

11. ~~**Disclosures**. Buyer has received the following (**check yes or no**): (a) Illinois Residential Real Property Disclosure Report: ☐ Yes/☐ No; (b) Heat Disclosure: ☐ Yes/☐ No; (c) Lead Paint Disclosure and Pamphlet: ☐ Yes/☐ No; and (d) Radon Disclosure and Pamphlet: ☐ Yes/☐ No.~~

12. ~~**Zoning Certification**. If the Property is located in the City of Chicago and contains four dwelling units or less, Seller shall provide zoning certification to Buyer at least 5 days prior to the Closing Date.~~

13. **Dual Agency.** The Parties confirm that they have previously consented to **Ryan Cybulski**_____ ("***Licensee***") to act as Dual Agent in providing brokerage services on behalf of the Parties and specifically consent to Licensee acting as Dual Agent on the transaction covered by this Contract.
Buyer Initials: *RM*   Buyer Initials:_____   Seller Initials: *RBT, as RCVR*   Seller Initials:_____

14. **Attorney Modification**. Within **10** business days after the Acceptance Date ("***Attorney Approval Period***"), the Parties' respective attorneys may propose written modifications to this Contract ("***Proposed Modifications***") on matters other than the Purchase Price, broker's compensation and dates. Any Proposed Modifications that are set forth in writing and accepted by the other party shall become terms of this Contract as if originally set forth in this Contract. If, within the Attorney Approval Period, the Parties cannot reach agreement regarding the Proposed Modifications, then, at any time after the Attorney Approval Period, either Party may terminate this Contract by written notice to the other Party. In that event, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. IN THE ABSENCE OF DELIVERY OF PROPOSED MODIFICATIONS PRIOR TO THE EXPIRATION OF THE ATTORNEY APPROVAL PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.

15. **Inspection:*** Within **60** business days after the Acceptance Date ("***Inspection Period***"), Buyer may conduct, at Buyer's sole cost and expense (unless otherwise provided by law) home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless separately waived), wood infestation, and/or mold inspections of the Property ("***Inspections***") by one or more properly licensed or certified inspection personnel (each, an "***Inspector***"). The Inspections shall include only major components of the Property, including, without limitation, central heating, central cooling, plumbing, well, and electric systems, roofs, walls, windows, ceilings, floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or damage to the Property or personal injury caused by the Inspections, Buyer, or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in writing ("***Buyer's Inspection Notice***") of any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the relevant Inspections report. Buyer agrees that minor repairs and maintenance costing less than $250 shall not constitute defects covered by this Paragraph. If the Parties have not reached written agreement resolving the inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other Party. In the event of such notice, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. *IN THE ABSENCE OF WRITTEN NOTICE PRIOR TO EXPIRATION OF THE INSPECTION PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.*
*RM*   *RBT, as RCVR*

* Buyer shall have two(2) 90 day inspection extensions with written request to the seller and explanation for any such request.

16. **General Provisions, Riders and Addendums**. **THIS CONTRACT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY BUYER AND SELLER AND DELIVERED TO BUYER OR BUYER'S DESIGNATED AGENT.** THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE LAST PAGE OF THIS CONTRACT AND RIDERS **NA**_____ *(list Rider numbers here)* AND ADDENDUM **Seller's OREO AS IS Addendum** *(list Addendum numbers here)* ATTACHED TO AND MADE A PART OF THIS CONTRACT.

[SIGNATURE PAGE FOLLOWS]

Buyer Initials: *RM*   Buyer Initials:_____                                   Seller Initials: *RBT, as RCVR*   Seller Initials:_____

| | | | |
|---|---|---|---|
| 117 | OFFER DATE: **February 3,** 20**21** | ACCEPTANCE DATE: _____ 20\_\_\_ | ("*Acceptance Date*") |

| 118 | BUYER'S INFORMATION: | SELLER'S INFORMATION: |
|---|---|---|
| 119 | Buyer's Signature: *Robert Miller* — 767AD1A35D624A4... | Seller's Signature: *R. Baker Thompson As Receiver* — 32ABF528DE1B4A8... |
| 120 | Buyer's Signature: | Seller's Signature: |
| 121 | Buyer's Name(s) (print): **Millco Acquisition Company** | Seller's Name(s) (print): **R. Baker Thompson as Receiver for Case 18-CV-2106** |
| 122 | Address: **5215 Old Orchard Rd, Suite 130** | Address: |
| 123 | City: **Skokie**    State: **IL**    Zip: **60077** | City:    State:    Zip: |
| 124 | Office Phone:    Home Phone: | Office Phone:    Home Phone: |
| 125 | Fax:    Cell Phone: | Fax:    Cell Phone: |
| 126 | Email Address: | Email Address: |
| 127 | The names and addresses set forth below are for informational purposes | The names and addresses set forth below are for informational purposes |
| 128 | to change. | only and subject to change. |
| 129 | **BUYER'S BROKER'S INFORMATION:** | **SELLER'S BROKER'S INFORMATION:** |
| 130 | Designated Agent (print): **Ryan Cybulski** | Designated Agent Name (print): **Ryan Cybulski** |
| 131 | Agent MLS Identification Number: **855344** | Agent MLS Identification Number: **855344** |
| 132 | Brokerage Company Name: **Vanguard Real Estate Services LLC**  MLS # **87250** | Brokerage Company Name: **Vanguard Real Estate Services LLC**  MLS # **87250** |
| 133 | Office Address: | Office Address: |
| 134 | City:    State:    Zip: | City:    State:    Zip: |
| 135 | Office Phone: **(312) 278-1005**  Cell Phone: | Office Phone: **(312) 547-9339**  Cell Phone: |
| 136 | Fax: | Fax: |
| 137 | Email: **ryan@realestatevanguard.com** | Email: **ryan@realestatevanguard.com** |
| 138 | **BUYER'S ATTORNEY'S INFORMATION:** | **SELLER'S ATTORNEY'S INFORMATION:** |
| 139 | Attorney Name: | Attorney Name: |
| 140 | Firm: | Firm: |
| 141 | Office Address: | Office Address: |
| 142 | City:    State:    Zip: | City:    State:    Zip: |
| 143 | Office Phone:    Cell Phone: | Office Phone:    Cell Phone: |
| 144 | Fax: | Fax: |
| 145 | Email: | Email: |
| 146 | **BUYER'S LENDER'S INFORMATION:** | |
| 147 | Mortgage Broker's Name: | |
| 148 | Lender: | |
| 149 | Office Address: | |
| 150 | City:    State:    Zip: | |
| 151 | Office Phone:    Cell Phone: | |
| 152 | Fax: | |
| 153 | Email: | |

**GENERAL PROVISIONS**

    **A. Prorations.** Rents, interest on existing mortgage, if any, water taxes and other items shall be prorated as of the Closing Date. Security deposits and required interest, if any, shall be paid to Buyer at Closing. Notwithstanding anything to the contrary contained in Paragraph 9 of this Contract, if the Property is improved as of the Closing Date, but the last available tax bill is on vacant land, Seller shall place in escrow an amount equal to **2%** of the Purchase Price and the Parties shall reprorate taxes within 30 days after the bill on the improved property becomes available.

    **B. Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

    **C. Title.** At least 5 days prior to the Closing Date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed herein this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at Closing by payment of money, Seller may have those exceptions removed at Closing by using the proceeds of the sale.

    **D. Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery or commercial delivery service, by mail-o-gram, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission. In addition, facsimile signatures or digital signatures shall be sufficient for purposes of executing this Contract and shall be deemed originals. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission.

    **E. Disposition of Earnest Money.** In the event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract. In the event of any default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request Seller's and Buyer's written consent to the Escrowee's intended disposition of the Earnest Money within 30 days after the notice. However, Seller and Buyer acknowledge and agree that if Escrowee is a licensed real estate broker, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. If Escrowee is not a licensed real estate broker, Seller and Buyer agree that if neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then Escrowee shall proceed to dispense the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30 day period, or if Escrowee is a licensed real estate broker and does not receive the joint written direction of Seller and Buyer authorizing distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the Interpleader and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of those claims and demands.

    **F. ~~Operational Systems.~~** ~~Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of Closing and that the roof is free of leaks and will be so at the time of Closing. Buyer shall have the right to enter the Property during the 48-hour period immediately prior to Closing solely for the purpose of verifying that the operational systems and appliances serving the Property are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.~~

    **G. Insulation Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the Federal Trade Commission, and Rider 13 is attached.

    **H. Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("***Code Violation Notice***"). If a Code Violation Notice is received after the Acceptance Date and before Closing, Seller shall promptly notify Buyer of the Notice.

    **I. Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

    **J. ~~Survey.~~** ~~At least 5 days prior to the Closing Date, Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's expense.~~

    **K. ~~Affidavit of Title; ALTA.~~** ~~Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.~~

    **L. Legal Description.** The Parties may amend this Contract to attach a complete and correct legal description of the Property.

    **M. RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

    **N. 1031 Exchange.** The Parties agree that at any time prior to the Closing Date, Buyer and/or Seller may elect to effect a simultaneous or non-simultaneous tax-deferred exchange pursuant to Section 1031, and the regulations pertaining thereto, of the Internal Revenue Code, as amended. Each party expressly agrees to cooperate with the other party in connection with any such exchange in any manner which shall not impose any additional cost or liability upon the cooperating party, including without limitation by executing any and all documents, including escrow instructions or agreements consenting to the assignment of any rights and obligations hereunder to an exchange entity, which may be necessary to carry out such an exchange; provided, however, that any election to effect such an exchange shall not delay the Closing Date.

    **O. Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

    **P. Removal of Personal Property.** Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

    **Q. Surrender.** Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted, subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that portion of the total cost related to this violation that is below $250.00.

    **R. Time.** Time is of the essence for purposes of this Contract.

    **S. Number.** Wherever appropriate within this Contract, the singular includes the plural.

    **T. Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

    **U. Business Days and Time.** Any reference in this Contract to "day" or "days" shall mean business days, not calendar days, including Monday, Tuesday, Wednesday, Thursday, and Friday, and excluding all official federal and state holidays.

    **V. Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

    **W. Brokers.** The real estate brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the listing broker in a multiple listing service in which the listing and cooperating broker both participate.

    **X. Original Executed Contract.** The listing broker shall hold the original fully executed copy of this Contract.

Buyer Initials: _RM_   Buyer Initials: _____   Seller Initials: _RBT, as RCVR_   Seller Initials: _____

# **<u>EXHIBIT B</u>**

4

# REINSTATEMENT AND SECOND
# ADDENDUM TO CONTRACT

**Seller:**     RBT Advisors, LLC, Court appointed receiver
**Buyer:**      Millco Acquisition Company
**Property:**   501 W. Fairchild, Danville, IL ("Property")

1.  Whenever there is a conflict or inconsistency between the terms of this Reinstatement and Second Addendum to Contract ("Second Addendum") and the terms of the Apartments/Investments Purchase Sale Contract (as amended by the Addendum to Contract dated April 30, 2021, the "Contract"), the terms of this Second Addendum supersede the Contract and the Contract shall be construed accordingly.

2.  <u>Reinstatement</u>. The Contract, which was terminated on June 15, 2021, is hereby reinstated and amended as more particularly described in this Second Addendum.

3.  <u>Purchase Price</u>. The Purchase Price shall be Three Hundred Sixty-Two Thousand Five Hundred and 00/100 Dollars ($362,500.00).

4.  <u>Inspection Period</u>. Buyer hereby waives the Inspection Period set forth in Section 15 of the Contract.

5.  <u>Entire Contract</u>. Except as specifically amended by this Second Addendum, the Contract shall remain in full force and effect and is hereby reinstated, ratified and confirmed. The Contract, as amended by this Second Addendum, constitutes the entire Contract between the parties with respect to the subject matter hereof, and there are no other representations, warranties or Contracts, written or oral, between Seller and Buyer with respect to the subject matter of this Contract, as amended by this Second Addendum.

6.  <u>Counterparts</u>. This Second Addendum may be executed in one or more counterparts, each of which shall be deemed an original. Signatures transmitted by facsimile or e-mail, through scanned or electronically transmitted .pdf, .jpg or .tif files, shall have the same effect as the delivery of original signatures and shall be binding upon and enforceable against the parties hereto as if such facsimile or scanned documents were an original executed counterpart.

7.  <u>Binding Effect</u>. This Second Addendum shall be binding upon and inure to the benefit of Seller and Buyer and their respective successors and permitted assigns.

DocuSign Envelope ID: 0CE5E033-A09F-4A45-9628-0B83C8A563CF
2:18-cv-02106-CSB-EIL   # 30   Filed: 07/15/21   Page 10 of 10

AGREED to this __6th__ day of July, 2021.

**BUYER:**                                                                 **SELLER:**

Millco Acquisition Company

_[signature]_
_____
By: Robert Miller
Its: Manager

DocuSigned by:
_R. Baker Thompson As Receiver_
—32ABF528DE1B4A8...